# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 18-544V
UNPUBLISHED

| | |
|---|---|
| LORI CELUCH, <br><br> Petitioner, <br> v. <br><br> SECRETARY OF HEALTH AND <br> HUMAN SERVICES, <br><br> Respondent. | Chief Special Master Corcoran <br><br> Filed: January 27, 2020 <br><br> Special Processing Unit (SPU); Findings of Fact; Onset; Influenza (Flu) Vaccine; Shoulder Injury Related to Vaccine Administration (SIRVA) |

*Paul R. Brazil*, Muller Brazil, LLP, Dresher, PA, for petitioner.

*Robert Paul Coleman, III*, U.S. Department of Justice, Washington, DC, for respondent.

## FINDINGS OF FACT[1]

On April 16, 2018, Lori Celuch filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a left shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine administered on October 17, 2016. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons discussed below, I find that the onset of Petitioner's left shoulder pain occurred within 48 hours of vaccination.

---

[1] Because this unpublished Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

I. **Relevant Procedural History**

Following the initial status conference held on June 7, 2018, Respondent was ordered to file a status report indicating how he intended to proceed in this case. ECF No. 8. On March 4, 2019, Respondent filed a status report stating that he would be willing to engage in discussions regarding a potential settlement of this case. ECF No. 19. The parties were thereafter ordered to file recurring status reports regarding the progress of their settlement discussions. ECF Nos. 20, 22, 24, 26, 29.

On August 22, 2019, Petitioner filed a status report indicating that "[t]he parties have explored informal resolution and have reached an impasse." ECF No. 30. At a subsequent status conference held on September 26, 2019, the parties agreed that the appropriate next step would be for Respondent to file his report pursuant to Vaccine Rule 4(c) setting forth his position in this case. ECF No. 31.

Respondent filed his Rule 4(c) Report on November 12, 2019. ECF No. 32. Respondent asserted that Petitioner had not established all of the elements necessary for a SIRVA Table Injury, including onset of the shoulder pain within 48 hours of the vaccination. Res. Report at 3-4. Respondent noted that Petitioner "did not complain of left shoulder pain to a medical professional until approximately two months after vaccination." *Id.* at 4.

On November 13, 2019, a Scheduling Order was issued, noting that I had reviewed Respondent's Rule 4(c) Report and the evidence filed to date in this case. ECF No. 33. I stated that briefing and a hearing were not necessary to make a finding of fact regarding the onset of Petitioner's alleged injury. *Id.* A deadline was set for the parties to file any additional relevant evidence they wished to have considered regarding this issue. *Id.*

On January 6, 2020, Petitioner filed a supplemental affidavit. ECF No. 35. No further evidence was filed. Accordingly, this matter is now ripe for adjudication.

II. **Issue**

At issue is whether Petitioner's first symptom or manifestation of onset after vaccine administration (specifically pain) occurred within 48 hours, as required by the Vaccine Injury Table and Qualifications and Aids to Interpretation ("QAI") for a Table SIRVA. 42 C.F.R. § 100.3(a) XIV.B. (2017) (influenza vaccination); 42 C.F.R. § 100.3(c)(10)(ii) (required onset for pain listed in the QAI).

III. **Authority**

Pursuant to Vaccine Act § 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act § 11(c)(1). A special master must consider, but is not bound by, any diagnosis,

conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. § 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Curcuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, at *19.

The United States Court of Federal Claims has recognized, however, that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

Medical records may also be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." § 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## IV.     Finding of Fact

For the reasons discussed below, I find that the onset of Petitioner's left shoulder pain occurred within 48 hours of vaccination. I make this finding after a complete review of the record to include all medical records, affidavits, Respondent's Rule 4(c) Report, and additional evidence filed. Specifically, I base this finding on the following evidence:

- On October 17, 2016, Petitioner was administered a flu vaccine intramuscularly in her left deltoid at a Walgreens Pharmacy in Kingston, NY. Petitioner's Exhibit ("Pet. Ex.") 1 at 1-2.

- On December 19, 2016 (two months post-vaccination), Petitioner presented to Orthopedic Associates with a chief complaint of left shoulder pain. Pet. Ex. 2 at 6. Petitioner reported at that time that her "problems began on October 17 when she received a flu shot in the left arm." *Id*. Petitioner stated that she experienced no immediate pain; however, she began to develop pain the day following her vaccination with stiffness, achiness to the lateral elbow, and loss of motion. *Id*. Petitioner indicated that her symptoms had worsened despite limited use of the arm. *Id*. On examination, Petitioner presented with a large area of induration in the medial head of the deltoid with tenderness. *Id*. at 7. Petitioner was further observed to have reduced left shoulder range of motion with positive impingement signs. *Id*. Petitioner was referred to physical therapy[3] and ordered to obtain an MRI of the shoulder.[4] *Id*. at 7-8.

- On June 16, 2017, Petitioner returned to Orthopedic Associates with complaints of left shoulder pain. *Id*. at 4. Petitioner again reported that her symptoms had "never entirely diminished following the onset of symptoms after a flu injection." *Id*.

- On April 16, 2018, Petitioner filed an affidavit in support of this Petition noting that, "[w]ithin 24 hours after vaccination, [she] began to feel stiffness and pain in [her] left shoulder." Pet. Ex. 5 at ¶ 3. Petitioner filed a

---

[3] Petitioner attended 24 physical therapy sessions from January 10, 2017 through May 4, 2017. Pet. Ex. 4 at 1-47. On January 10, 2017, Petitioner completed a physical therapy medical questionnaire noting that she had experienced left shoulder pain since October 2016. *Id*. at 53.

[4] A December 30, 2016 MRI of Petitioner's left shoulder revealed, in pertinent part, mild tendinopathy of the supraspinatus and infraspinatus tendons. Pet. Ex. 3 at 21. The MRI did not reveal abnormal mass lesion or fluid collection. *Id*.

4

supplemental affidavit on January 6, 2020. Pet. Ex. 7. She averred that she had "developed pain in [her] left shoulder on the day after [the] vaccination." *Id.* at ¶ 2.

I find Petitioner's affidavits to be credible and in agreement with the contemporaneously created treatment records. Indeed, at her <u>first</u> post-vaccination medical appointment, Petitioner specifically tied her left shoulder symptoms to the vaccination and specified that her pain had begun <u>the day following the vaccination</u>. Pet. Ex. 2 at 6. Moreover, at subsequent medical encounters, Petitioner consistently tied her symptoms to the flu vaccination. *Id.* at 2, 4.

Although Petitioner did not seek treatment for her left shoulder injury until two months following the October 17, 2016 vaccination, I do not find this delay to be dispositive regarding the issue of onset. Indeed, Petitioner's medical records reflect a pattern of treatment similar to other SIRVA claims, in which injured parties reasonably delay treatment, often based on the assumption that their pain is transitory. *See, e.g.*, *Larish v. Sec'y of Health & Human Servs*, 18-20V, 2019 WL 5266886, at *6-10 (Fed. Cl. Spec. Mstr. Jul. 2, 2019) (finding onset of shoulder pain within 48 hours of vaccination despite a nine-week delay in treatment because petitioner's medical records recorded immediate post-vaccination pain); *Williams v. Sec'y of Health & Human Servs*, 17-830V, 2019 WL 1040410, at *9 (Fed. Cl. Spec. Mstr. Jan. 31, 2019) (noting a delay in seeking treatment because petitioner underestimated the severity of her shoulder injury); *Knauss v. Sec'y of Health & Human Servs*, 16-1372V, 2018 WL 3432906 (Fed. Cl. Spec. Mstr. May 23, 2018) (noting a three-month delay in seeking treatment without a specified reason).

Accordingly, I find there is preponderant evidence to establish that the onset of Petitioner's left shoulder pain occurred within 48 hours of her October 17, 2016 flu vaccination.

## V. Scheduling Order

Respondent shall file a status report, by no later than **Wednesday, February 26, 2020**, indicating whether he is interested in exploring an informal resolution of Petitioner's claim.

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master