# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 18-544V
UNPUBLISHED

| | |
|---|---|
| LORI CELUCH,<br><br>     Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>     Respondent. | Chief Special Master Corcoran<br><br>Filed: May 10, 2021<br><br>Special Processing Unit (SPU);<br>Decision Awarding Damages; Pain<br>and Suffering; Influenza (Flu)<br>Vaccine; Shoulder Injury Related to<br>Vaccine Administration (SIRVA) |

*Paul R. Brazil*, Muller Brazil, LLP, Dresher, PA, for petitioner.

*Ryan Daniel Pyles*, U.S. Department of Justice, Washington, DC, for respondent.

## DECISION AWARDING DAMAGES[1]

On April 16, 2018, Lori Celuch filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a Shoulder Injury Related to Vaccine Administration ("SIRVA") as a result of an influenza ("flu") vaccine administered on October 17, 2016. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons described below, I find that Petitioner is entitled to an award of damages in the amount of **$71,120.00**, **representing compensation in the amount of**

---

[1] Because this unpublished decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

**$70,000.00 for actual pain and suffering and $1,120.00 for past unreimbursable expenses.**

I. **Relevant Procedural History**

As indicated above, this matter was filed in April 2018. On March 4, 2019, Respondent filed a status report stating that he would be willing to engage in discussions regarding a potential settlement of this case. ECF No. 19. The parties were thereafter ordered to file recurring status reports regarding the progress of their settlement discussions. *See generally* ECF Nos. 20, 22, 24, 26, 29.

On August 22, 2019, Petitioner filed a status report indicating that the parties had reached an impasse in their discussions. ECF No. 30. Respondent thereafter filed a Rule 4(c) Report opposing compensation on November 12, 2019. ECF No. 32. Respondent asserted that Petitioner had not established all of the elements necessary for a SIRVA Table claim, including onset of the shoulder pain within 48 hours of the vaccination. Res. Report at 3-4. Respondent additionally argued that there was evidence indicating Petitioner's symptoms were not limited to the shoulder in which the vaccine was administered. *Id.* at 4.

On January 27, 2020, I issued a fact ruling finding that Petitioner's left shoulder pain occurred within 48 hours of her October 17, 2016 flu vaccination. ECF No. 37. At a status conference held on March 12, 2020, Petitioner agreed to file an expert report addressing Respondent's remaining objections to compensation as set forth in the Rule 4(c) Report. ECF No. 40.

Petitioner filed an expert report and accompanying medical literature on August 17, 2020. ECF Nos. 44-45. On September 17, 2020, Respondent filed an Amended Rule 4(c) Report[3] (ECF No. 46) conceding entitlement, and I issued a ruling finding Petitioner entitled to compensation on September 24, 2020. ECF No. 48. The next month, on October 26, 2020, Petitioner filed a status report indicating that the parties had again reached an impasse in their discussions to informally resolve damages. ECF No. 50. I subsequently set a briefing schedule to resolve the disputed damages issue.

Petitioner filed her brief ("Br.") in support of damages on January 8, 2021 (ECF No. 52), and Respondent responded ("Opp.") on February 23, 2021. ECF No. 53. Petitioner filed a reply brief on March 9, 2021. ECF No. 54. I thereafter proposed that the parties be given the opportunity to argue their positions at a motions hearing, at which time I would

---

[3] Respondent indicated that he reserved the right to a potential appeal of the January 27, 2020 factual ruling, and maintained that a finding of entitlement to compensation could not be sustained if the ruling were vacated or overturned on appeal. *See* Amended Res. Report at 2 n.1.

decide the disputed damages issues. ECF No. 55. The parties confirmed that they were amenable to this proposal (ECF No. 56), and the hearing was held on April 30, 2021. This written decision memorializes my resolution of the matter.[4]

The parties are in agreement as to Petitioner's entitlement to $1,120.00 for past unreimbursable medical expenses (ECF No. 56), leaving only the determination of a pain and suffering award in dispute.

## II.     Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Human Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Human Servs.*, No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), vacated and remanded on other grounds, 70 F.3d 1240 (Fed. Cir. 1995)).

---

[4] At the end of the hearing, I issued an oral ruling from the bench on damages in this case. That ruling is set forth fully in the transcript from the hearing, which is yet to be filed with the case's docket. The transcript from the hearing is, however, fully incorporated into this Decision.

3

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g., Doe 34 v. Sec'y of Health & Human Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And I may of course rely on my own experience (along with my predecessor Chief Special Masters) adjudicating similar claims. *Hodges v. Sec'y of Health & Human Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

Although pain and suffering in the past was often determined based on a continuum, as Respondent argues, that practice was cast into doubt by the Court several years ago. *Graves v. Sec'y of Health & Human Servs.*, 109 Fed. Cl. 579, 489-90 (2013). In *Graves*, Judge Merrow rejected a special master's approach of awarding compensation for pain and suffering based on a spectrum from $0.00 to the statutory $250,000.00 cap. Judge Merrow maintained that to do so resulted in "the forcing of all suffering awards into a global comparative scale in which the individual petitioner's suffering is compared to the most extreme cases and reduced accordingly." *Graves*, 109 Fed. Cl. at 590. Instead, Judge Merrow assessed pain and suffering by looking to the record evidence, prior pain and suffering awards within the Vaccine Program, and a survey of similar injury claims outside of the Vaccine Program. *Id.* at 595. Under this alternative approach, the statutory cap merely cuts off higher pain and suffering awards – it does not shrink the magnitude of all possible awards as falling within a spectrum that ends at the cap.

### III. Appropriate Compensation in this SIRVA Case

Ms. Celuch's awareness of her injury is not disputed, leaving only its severity and duration to be considered. In determining an appropriate pain and suffering award, I have carefully reviewed the complete record in this case. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases, and relied upon my experience adjudicating such cases. However, my determination is ultimately based upon the specific circumstances of this case.

In his brief, Respondent argues that an award of $45,000.00 is appropriate for pain and suffering based on the documented severity of Petitioner's pain, her treatment course, and record evidence suggesting pre-vaccination shoulder pathology. Opp. at 2, 6. Respondent also references two prior reasoned SIRVA decisions within the Program

4

– *Bossenbroek*[5] and *Knauss*[6] – in support of his proposed award. However, Respondent asserts that pain and suffering awards outside the Program (often arising in state court tort actions) should also be considered, and he provides a list of such cases as a comparison to the present matter. *Id.* at 7-8. I have considered Respondent's arguments but find that awards issued *within the Program* (especially as set forth in reasoned decisions) are most persuasive. It is important to bear in mind the policy purposes of the Program – that it is a no-fault system intended to be generous in many regards, resulting in a slightly different scale (that admittedly may produce higher award values than the non-Program comparables pointed to by Respondent). Thus, other reasoned decisions in the Vaccine Program provide the most useful guidance in reaching an award amount in this case.[7]

For her part, Ms. Celuch requests an award of $85,000.00 for pain and suffering and cites four prior SPU damages determinations – *Attig*,[8] *Marino*,[9] *Kim*,[10] and *Bordelon*.[11] Br. at 1, 4-6. Petitioner argues that of these four cases, *Attig* and *Bordelon* are the most comparable to the present matter due to similarities in the petitioners' overall treatment course, although some factors (e.g., the amount of physical therapy) actually establish a greater degree of severity in this case. *Id.* at 5-6.

---

[5] *Bossenbroek v. Sec'y of Health & Human Servs.*, No. 17-122V, 2020 WL 2510454 (Fed. Cl. Spec. Mstr. April 3, 2020) (awarding $50,000.00 for past pain and suffering).

[6] *Knauss v. Sec'y of Health & Human Servs.*, No. 16-1372V, 2018 WL 3432906 (Fed. Cl. Spec. Mstr. May 23, 2018) (awarding $60,000.00 for pain and suffering).

[7] I reject Respondent's argument, however, that the amounts awarded in proffered cases are a more accurate gauge of the appropriate amount to be awarded than reasoned decisions from the court and special masters. A proffer is simply Respondent's assessment of the appropriate amount to be awarded, and a special master's approval of an award at a proffered level does not provide a reasoned instance, produced by a judicial neutral that can be looked to when evaluating the damages to be awarded – even if settled cases and proffers provide some evidence of the kinds of awards received overall in comparable cases.

[8] *Attig v. Sec'y of Health & Human Servs.*, No. 17-1029V, 2019 WL 1749405 (Fed. Cl. Spec. Mstr. Feb. 19, 2019) (awarding $75,000.00 for pain and suffering).

[9] *Marino v. Sec'y of Health & Human Servs.*, No. 16-0622V, 2018 WL 2224736 (Fed. Cl. Spec. Mstr. Mar. 26, 2018) (awarding $75,000.00 for pain and suffering).

[10] *Kim v. Sec'y of Health & Human Servs.*, No. 17-418V, 2018 WL 3991022 (Fed. Cl. Spec. Mstr. July 20, 2018) (awarding $75,000.00 for pain and suffering).

[11] *Bordelon v. Sec'y of Health & Human Servs.*, No. 17-1892V, 2019 WL 2385896 (Fed. Cl. Spec. Mstr. April 24, 2019) (awarding $75,000.00 for pain and suffering).

Pursuant to my oral ruling on April 30, 2021 (which is fully adopted herein), **I find that $70,000.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.** My decision has several bases.[12]

The overall severity of the injury at issue is not high enough to warrant the magnitude of the award requested by Ms. Celuch. Indeed, the evidence in this case establishes that Petitioner experienced a relatively mild SIRVA which did not necessitate immediate care, surgery, or lengthy overall treatment. Thus, Petitioner first sought treatment for her left shoulder pain on December 19, 2016 – 63 days following vaccination. Ex. 2 at 6. At that time, Petitioner rated her pain as "5" out of "10" and was observed to have reduced shoulder range of motion, positive impingement sign, and mild weakness. *Id.* at 7. She was prescribed Voltaren gel for symptom relief, authorized to obtain an MRI, and referred to physical therapy. *Id.* A subsequent MRI of Petitioner's left shoulder completed on December 30, 2016, revealed only mild findings, including mild tendinopathy of the supraspinatus and infraspinatus tendons. *Id.* at 2-3.

The next month, on January 10, 2017, Ms. Celuch underwent an initial physical therapy evaluation. Ex. 4 at 1. Petitioner rated her pain as "6" or "7" out of "10" and stated that she was unable to perform overhead activities due to pain.[13] *Id.* at 1, 53. On examination, Petitioner presented with 105 degrees of active shoulder flexion; 95 degrees of active shoulder abduction; 70 degrees of active external rotation; and 45 degrees of active internal rotation. *Id.* at 1. Petitioner was also observed to have positive impingement signs and weakness of the shoulder. *Id.* at 2.

Over the next four months, Ms. Celuch underwent 24 total physical therapy sessions with gradual improvement of her symptoms. *Id.* at 3-48. At her final appointment on May 4, 2017, Petitioner reported that her shoulder felt "great," and that she had "recovered 100% since [her] initial visit." *Id.* at 47. Petitioner indicated that she would continue treatment with a home exercise program. *Id.*

At an orthopedic appointment the next month, on June 16, 2017, Ms. Celuch reported continuing left shoulder pain that worsened with lifting. Ex. 2 at 4. She rated her pain as "2" out of "10." *Id.* On examination, Petitioner presented with positive impingement sign and mild weakness. *Id.* at 5. Her orthopedist administered a corticosteroid injection and advised Petitioner to continue activities as tolerated. *Id.* There are no records of any subsequent treatment

---

[12] A more complete recitation of the facts can be found in the Petition, Respondent's Rule 4(c) Report, and the parties' briefing.

[13] Petitioner's medical record documents a handwritten mark on a line reflecting pain levels ranging from "0" to "10." Ex. 4 at 53. It appears Petitioner rated her pain as "6" or "7" out of "10." *Id.*

Based on the above, I find that Petitioner was largely recovered by June 16, 2017 (approximately eight months post-vaccination), as reflected by her mild reported pain and the lack of any subsequent treatment. My award for pain and suffering has accounted for the cumulative record evidence documenting Petitioner's pain and functional limitations, her MRI findings, her physical therapy, and her overall treatment course.

I have considered the reasoned damages decisions cited by the parties but find that the cases most analogous to the matter at hand, and hence providing appropriate benchmarks for what the award in this case should be, are *Bordelon* and *George*.[14] These cases share many relevant characteristics with the present matter, including the total duration of injury (approximately eight months), the generally mild findings on MRI imaging, and the administration of one corticosteroid injection. *Bordelon,* 2019 WL 2385896*,* at *5-6. *George,* 2020 WL 4692451, at *2-3. As with Ms. Celuch, the petitioners in these cases were additionally recorded as having good prognoses at the conclusion of their treatment with physical therapy.

Nevertheless, a slightly higher award is warranted in this case compared to *George,* given the more severe documented levels of pain recorded throughout Ms. Celuch's treatment course. *George,* 2020 WL 4692451, at *2. Conversely, Petitioner's course was less severe than the claimant in *Bordelon,* who sought post-vaccination treatment within two weeks, rated her most severe pain as "8" or "9" out of "10," and was the single mother of three children during the period she was injured. *Bordelon,* 2019 WL 2385896*,* at *1, 5-6. $70,000.00 is a reasonable outcome, falling in the range between these two otherwise-comparable cases.

## IV.     Conclusion

For all of the reasons discussed above and based on consideration of the record as a whole, **I find that $70,000.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.[15] I also find that Petitioner is entitled to $1,120.00 in actual unreimbursable expenses.**

---

[14] *George v. Sec'y of Health & Human Servs.*, No. 18-0426V, 2020 WL 4692451 (Fed. Cl. Spec. Mstr. July 10, 2020) (awarding $67,000.00 for pain and suffering).

[15] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* § 15(f)(4)(A); *Childers v. Sec'y of Health & Human Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Human Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

Based on the record as a whole and arguments of the parties, **I award Petitioner a lump sum payment of $71,120.00 in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under § 15(a).

The clerk of the court is directed to enter judgment in accordance with this decision.[16]

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master

---

[16] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.